FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2018 NOV -1 PM 3:20
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FOSTER LOGGING, INC., and )
AMERICAN GUARANTEE & LIABILITY )
INSURANCE COMPANY, as subrogee )
of FOSTER LOGGING, INC., )
)
Plaintiffs, )
)
v. ) CASE NO. CV418-058
)
UNITED STATES OF AMERICA, )
)
Defendant. )
)

## O R D E R

Before the Court is the Government's Motion to Dismiss. (Doc. 11.) For the following reasons, the Government's Motion to Dismiss is **GRANTED**. As a result, Plaintiffs' complaint is **DISMISSED**. The Clerk is **DIRECTED** to close this case.

### BACKGROUND

On April 20, 2017, the Fort Stewart Army Airfield Forestry Branch initiated a prescribed burn in the B-20 area near Fort Stewart, a military base in Georgia. (Doc. 1 ¶ 11.)[1] On the same day, Plaintiff Foster Logging Inc. ("Foster") was harvesting timber nearby. (Id. ¶ 8.) On April 21, 2017,

---

[1] For the purposes of considering the Government's Motion to Dismiss, this Court will accept all factual allegations in the complaint as true and construe all allegations in the light most favorable to Plaintiffs. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).

Plaintiff Foster parked its equipment in the B-19.5 area near Fort Stewart. (Id. ¶ 10.) According to the complaint, the fire spread to the B-19.5 area and damaged Plaintiff Foster's equipment after the Government failed to properly monitor and maintain the prescribed burn. (Id. ¶¶ 12-13.) Some of the damaged equipment was insured by Plaintiff American Guarantee and Liability Insurance Company ("AGLIC"). (Id. ¶ 9.) As a result of the damage to the property, Plaintiff Foster was unable to harvest timber for three days. (Id. ¶ 14.) Plaintiff Foster was required to rent equipment to continue harvesting timber in the area. (Id. ¶ 15.)

On March 19, 2018, Plaintiffs Foster and AGLIC brought suit alleging that the Government was negligent in its maintenance of the prescribed fire. (Doc. 1.) In the complaint, Plaintiff AGLIC seeks to recover $247,348.12, plus costs, for damage caused to the insured equipment as a result of the Government's failure to properly monitor and maintain the controlled burn. (Id. ¶ 25.) Additionally, Plaintiff Foster seeks to recover $125,120.52, plus costs, to account for uncovered losses sustained as a result of the fire. (Id. ¶ 24.)

The Government has now filed a Motion to Dismiss, seeking dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 11.) In its motion, the

Government contends that this Court lacks subject matter jurisdiction to consider Plaintiffs' claims because the Government retains its sovereign immunity in this action. In response, Plaintiffs contend that the Government has waived its immunity under the Federal Tort Claims Act, 28 U.S.C. § 2678, et seq. Accordingly, Plaintiffs contend that this Court should deny the Government's Motion to Dismiss and consider the merits of Plaintiffs' claims.

**ANALYSIS**

I. <u>STANDARD OF REVIEW</u>

Federal courts have limited subject matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving that it exists. <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994). An opposing party may challenge the court's subject matter jurisdiction over an action by filing a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(1). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." <u>McElmurray v. Consol. Gov't of Augusta-Richmond Cty.</u>, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981)).

In this case, the parties agree that the Government has raised a facial attack against the allegations in Plaintiffs' complaint. "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.' " Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). The court should only dismiss the plaintiff's complaint on a facial attack "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1536 n.5 (11th Cir. 1994).

II. SUBJECT MATTER JURISDICTION

In its motion, the Government alleges that this Court lacks subject matter jurisdiction over this action because the Government's sovereign immunity bars Plaintiffs' suit. "It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued." Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015). Under the Federal Tort Claims Act ("FTCA"), however, the Government has waived its sovereign immunity and consented to be sued for certain tort actions. Id. Although the FTCA acts as a general

4

waiver of the Government's immunity, the Government "has the power to condition a waiver of its immunity as broadly or narrowly as it wishes, and according to whatever terms it chooses to impose." Id. at 1321-22 (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Under the FTCA, the Government has elected to limit its waiver of immunity through certain express statutory exceptions. See 28 U.S.C. § 2680.

At issue in this case is the exception provided in 28 U.S.C. § 2680(a)—often referred to as the discretionary function exception. The "discretionary function exception provides that the United States does not waive [its] sovereign immunity for claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government.'" Douglas v. United States, 814 F.3d 1268, 1273 (11th Cir. 2016) (quoting 28 U.S.C. § 2680(a)). When considering whether the discretionary exception applies in this case, the exception "must be strictly construed in favor of the United States." JBP Acquisitions, LP v. United States ex rel. FDIC, 224 F.3d 1260, 1263-64 (11th Cir. 2000).

To determine whether the discretionary exception bars a claim, this Court must conduct a two-part inquiry. First, the Court must consider whether the conduct at issue involves "an element of judgment." United States v. Gaubert, 499 U.S. 315,

322 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

In this case, neither party offers any argument that there was a mandatory statute, regulation, or directive which governed the controlled burn initiated by the Government. More importantly at this stage in the proceedings, Plaintiffs' complaint does not allege the existence of any such regulation, statute, or directive. Accordingly, this Court finds that the Government's decision to initiate and monitor a prescribed burn involves an element of judgment as required by the first prong of the discretionary function exception analysis. See Swafford v. United States, 839 F.3d 1365, 1370 (11th Cir. 2016) (finding that the decision not to maintain a staircase must involve an element of judgment because the plaintiff failed to provide any evidence of a federal statute, regulation, or policy that provided instructions detailing how to maintain the staircase).

After determining that the Government's decision to initiate and control the prescribed burn likely involved an element of judgment, this Court must then consider whether the

Government's initiation and maintenance of the prescribed burn in this case involved the "kind [of judgment] that the discretionary function was designed to shield." Berkovitz, 486 U.S. at 536. To make this determination, the Court then "must determine whether that judgment is grounded in considerations of public policy." Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997) (citing Gaubert, 499 U.S. at 322-33). "As the Supreme Court has explained, the [discretionary function] exception is designed to prevent 'judicial second guessing' of decisions 'grounded in social, economic, and political policy.' " Swafford, 839 F.3d at 1370 (quoting Varig Airlines, 467 U.S. 797, 814 (1984)).

In this case, Plaintiffs contend that the discretionary function exception was not designed to shield the Government from liability. In Plaintiffs' view, there was no policy basis for the Government's decision not to monitor or maintain the prescribed burn. Instead, Plaintiffs contend that the Government made an impermissible policy determination that does not qualify under the discretionary function exception.

In support of their opinion, Plaintiffs rely on the Eleventh Circuit Court of Appeals' decision in Swafford v. United States, 839 F.3d 1365 (11th Cir. 2016). In Swafford, a plaintiff brought suit after he fell down a staircase owned and operated by the United States Army Corps of Engineers. Id.

7

at 1367. The plaintiff alleged that Army Corps of Engineers was responsible for his injuries because the staircase was negligently maintained. Id. at 1368. On review the Eleventh Circuit considered whether the discretionary function exception barred the plaintiff's claim. Id. at 1369-70. The Eleventh Circuit discussed that there were some otherwise discretionary acts that fell outside of the scope of the discretionary-function exception because those acts—although discretionary in nature—did not involve a permissible exercise of a policy judgment. Id. at 1370. As an example, the Eleventh Circuit discussed that negligent driving technically involved an element of discretion but did not involve any discretionary function that would need to actually account for any policy judgments. Id. (citing Gaubert, 499 U.S. at 315 n.7). Ultimately, the Eleventh Circuit concluded that the discretionary function did not bar the plaintiff's claim because "once the Corps exercised its discretion to build and maintain the stairs, failure to maintain them in a safe condition is simply not a permissible exercise of policy judgment." Id. at 1372.

In this case, Plaintiffs contend that the Government also did not make a permissible policy judgment by failing "to observe, monitor, and maintain the fire." (Doc. 14 at 3.) Plaintiffs contend that once the Government initiated the

controlled burn, the Government was obligated to maintain the fire so as not to damage Plaintiff Foster's property. Plaintiffs argue that, like the impermissible decision to not maintain the stairs in Swafford, the Government's decision not to control the prescribed burn did not involve a valid policy determination that would meet the requirements of the second prong of the discretionary function exception.

After careful consideration, the Court disagrees with Plaintiffs' position. First, the Court finds that the conduct and policy judgments at issue in Swafford are materially distinguishable from the facts and policy judgments alleged in this case. In Swafford, the Eleventh Circuit found that the failure to maintain a staircase did not constitute a permissible exercise of judgment. 839 F.3d at 1371. In this case, however, there are markedly more policy considerations that could have affected the Government's decision not only to initiate the controlled fire, but to maintain and control the fire. When maintaining a fire, the Government may need to consider certain policy implications that include the safety of public citizens in the area, the safety of those monitoring the fire, and the management of limited resources used to control a fire.² In addition, the Government may need to

---

² There is no requirement that the Government actually considered these policies when determining how to control the

9

consider certain policy implications related to the fire and the protection of surrounding natural resources. See Autery v. United States, 992 F.2d 1523, 1531 (11th Cir. 1993) (finding that the discretionary function should apply when government officials had to consider "the extent to which the natural state of the forest should be preserved").[3]

In addition, the existence of the military base at Fort Stewart also adds weight to the Government's position that the discretionary function exception should apply in this case. In OSI, Inc. v. United States, 285 F.3d 947, 949 (11th Cir. 2002), a metal building manufacturer sued the United States Air Force for its alleged negligence in the maintenance of three solid waste landfills that polluted a local groundwater

---

fire. According to the Eleventh Circuit "[u]nder this second-prong of the test [the Court must] look at whether the questioned act is 'susceptible to policy analysis.' The exception does not require there to have been actual 'weighing of policy considerations.' " OSI, 285 F.3d at 950-91 (quoting Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997)).

[3] Courts outside the Eleventh Circuit have also found that the Government must consider a variety of policy implications when deciding how to control a spreading fire. See, e.g., Miller v. United States, 163 F.3d 591, 596 (9th Cir. 1998) (finding that the discretionary function exception barred a plaintiff's claim that the government failed to properly control a naturally ignited fire because "the decision regarding how to best approach the [] fire also required consideration of fire suppression costs, minimizing resource damage and environmental impacts, and protecting private property"); Thune v. United States, 872 F. Supp. 921, 924-25 (D. Wyo. 1995) (finding that the government's decisions with respect to how to manage a prescribed burn that unintentionally spread involved a variety of policy considerations).

source. In concluding that the discretionary function barred the manufacturer's suit against the Air Force, the Eleventh Circuit emphasized the unique policy considerations that arise when dealing with a military base. Id. at 953 ("The nature of the military's function requires that it be free to weigh environmental policies against security and military concerns.").[4] Similarly, in this case, the Government had to consider the needs of the military base in making decisions with respect to how it monitored and controlled the prescribed burn.

Ultimately, the Court finds that the Government's decision to initiate and maintain the prescribed burn falls within the discretionary function exception to the FTCA. The Court finds that the decision to initiate and maintain the fire involved an element of judgment and implicated important policy considerations. Accordingly, the Government has not

---

[4] Other courts considering whether the discretionary function exception bars certain claims have found that the policy implications created by military operations are persuasive. See, e.g., Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 103 (1st Cir. 2012)("The Supreme Court has made clear that federal courts are constrained not to interfere with the exercise of such discretion by any agency, and that is particularly so in the running of military operations."); Minns v. United States, 155 F.3d 445, 451 (4th Cir. 1998) ("We should note that when discretionary decisions are ones of professional military discretion, they are due the courts' highest deference.").

waived its immunity in this case and Plaintiffs' suit is barred.

CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is **GRANTED**. This Court lacks subject matter jurisdiction to consider the merits of Plaintiffs' claims. As a result, Plaintiffs' complaint is **DISMISSED** and the Clerk is **DIRECTED** to close this case.

SO ORDERED this 1st day of November 2018.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA